UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                              Chapter 7 Case

DEAN PETERSEN,                                      BKY 13-40368

　　　　　　　Debtor.

**NOTICE OF HEARING AND MOTION FOR OBJECTION TO
CLAIMED EXEMPT PROPERTY AND MOTION FOR TURNOVER
OF PROPERTY OF THE ESTATE AND MEMORANDUM OF LAW IN SUPPORT**

TO:   The debtor and other entities specified in Local Rule 9013-3.

　　　1.　　Nauni J. Manty, trustee of the bankruptcy estate of the above-named debtors, moves the court for the relief requested below and gives notice of hearing.

　　　2.　　The court will hold a hearing on this motion at **9:30 AM** on **Tuesday, May 7, 2013** before a United States Bankruptcy Judge, in Courtroom No. 7 West, 300 South Fourth Street, Minneapolis, Minnesota 55415, or as soon thereafter as counsel can be heard.

　　　3.　　Any response to this motion must be filed and served not later than May 2, 2013, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays), **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

　　　4.　　This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition was filed under Chapter 7 on January 25, 2013, and the case is now pending in this court.

　　　5.　　This motion arises under 11 U.S.C. §§ 522, 541(a), and 542(a), Bankruptcy Rule 4003, and Local Rule 4003-3.  This motion is filed under Bankruptcy Rule 9014 and Local Rules

9001-1 to 9006-1 and 9013-1 to 9013-5. The trustee requests relief with respect to the debtor's claimed exempt property and turnover of the non-exempt property.

6.   The 341 meeting of creditors was held on February 22, 2013. The debtor stipulated to an extension of the deadline to object to exemptions to May 7, 2013. *See* Dkt. No. 9. The court entered an order approving the stipulation on March 12, 2013. *See* Dkt. No. 10. The deadline to object to the debtor's exemptions is May 7, 2013.

7.   The trustee objects to an exemption of inheritance proceeds that were deposited into an IRA shortly before filing. The debtor testified at the 341 meeting of creditors that he had withdrawn $23,000.00 from his IRA prior to filing for necessary living expenses. From the bank records, the debtor spent those proceeds on a number of luxury items and went on a spending spree, gambled at casinos, rented a limo and went out for a $253.42 dinner at Stella's Fish Cafe. The spending spree occurred when the debtor was not paying his creditors. The debtor then received $30,350.29 as an inheritance shortly before filing. Rather than using the proceeds to repay his creditors, the debtor used the inheritance proceeds to refund his IRA nine days prior to his filing. He then claimed those proceeds as exempt pursuant to 11 U.S.C. § 522(d)(10)(E). Shortly after filing, but before the time period to object to exemptions expired, he began withdrawing those same proceeds from his IRA. A summary of the withdrawals and deposits is as follows:

| Date | Withdrawal | Deposit | Source Account | Destination Account |
|---|---|---|---|---|
| 11/27/2012 | $10,000.00 | | Ameriprise Rollover IRA | Ameriprise One Financial |
| 12/13/2012 | $10,000.00 | | Ameriprise Rollover IRA | Ameriprise One Financial |
| 12/28/2012 | $500.00 | | Ameriprise Roth IRA | Ameriprise One Financial |
| 1/3/2013 | $500.00 | | Ameriprise Rollover IRA | Ameriprise One Financial |
| 1/8/2013 | $2,000.00 | | Ameriprise Rollover IRA | Ameriprise One Financial |
| 1/16/2013 | | $22,500.00 | Ameriprise One Financial | Ameriprise Rollover IRA |
| 1/16/2013 | | $500.00 | Ameriprise One Financial | Ameriprise Roth IRA |
| 1/25/2013 | Voluntary Petition in Bankruptcy Under Chapter 7 | | | |
| 2/20/2013 | $20,000.00 | | Ameriprise Rollover IRA | Ameriprise One Financial |

| | | | | |
|---|---|---|---|---|
| 2/20/2013 | $2,000.00[1] | | Ameriprise Rollover IRA | Ameriprise One Financial |
| 3/20/2013 | $2,000.00 | | Ameriprise Rollover IRA | Ameriprise One Financial |

*See* Exh. A, pages from Ameriprise account statements showing transfers.

    8.    The trustee objects to the exemption of certain unnecessary luxury items the debtor purchased prior to filing: (a) Twins season tickets purchased on November 30, 2012 for $2,700.00 and (b) a MacBook Air purchased on December 18, 2012 for $1,879.90. *See* Exh. B, Ameriprise statement showing transfer of $2,700.00 to "Twins Ballpark LLC;" Exh. C, Ameriprise statement showing transfer of $1,879.90 to Best Buy. Rather than using the monies to repay his creditors, the debtor used the monies to purchase non-essential luxury goods all to the detriment of his creditors.

    9.    The debtor also listed on his schedules and testified at the 341 meeting that he used some of the monies for tuition and also purchased various items prior to filing. While the debtor did pay tuition and made those purchases, the debtor, in fact, returned items and received refunds after his filing. The trustee therefore requests turnover of monies that were spent pre-petition and for which the debtor received full refunds after the date of filing including: (a) $3,950.00 paid to St. Scholastica for tuition on January 15, 2013 with a full refund received by the debtor on February 21, 2013; and (b) $129.99 spent at Cabela's on January 3, 2013 with a full refund received by the debtor on January 29, 2013. *See* Exh. D, Central Checking Account statements showing the transfer to St. Scholastica and subsequent refund; Exh. E, USAA Federal Savings Bank statement showing the transfer to Cabela's and the subsequent refund.

    10.    At the debtor's 341 meeting, the debtor testified that he borrowed $24,053.00 from his IRA in November for necessary living expenses. However, that is not true. Again, rather than using the proceeds to repay his creditors, the debtor used the proceeds as follows:

---

[1] According to the account statements, the $2,000.00 withdrawal is part of a monthly scheduled disbursement plan.

      a)    debit card transactions at restaurants totaling $2,271.78 for the three months November 2012, December 2012, and January 2013;

      b)    debit card transactions for sporting goods, firearms, and firearms training totaling $4,331.12 for the period from November 1, 2012 to January 3, 2013;

      c)    debit card transactions for tattoos totaling $570.00 between November 14, 2012 and December 14, 2012;

      d)    debit card transactions at Best Buy totaling $2,710.48 between December 18 2012 and January 15, 2013;

      e)    debit card transactions at Target Field, the Twins website, MLB.com, and Sports Authority totaling $3,760.97 between November 30, 2012 and January 4, 2013;

      f)    $4,958.95, including fees, withdrawn from ATMs between November 23, 2012 and January 8, 2013 including $805 withdrawn from an ATM at Mystic Lake Casino in two transactions on December 24 and December 25, 2012;

      g)    debit card transactions for a Christmas Eve limousine ride totaling $443.50;

      h)    a debit card transaction paying $256 for the debtor's dog to stay at an upscale pet hotel;

      i)    seven transactions paid by draft check payable to persons or entities to be determined in an aggregate amount of $8,021.00 between November 9, 2012 and December 27, 2012.[2]

---

[2] The trustee requested the bank records, including copies of cancelled checks. However, the debtor did not provide the copies of the cancelled checks, so the trustee is, at this time, unable to determine the nature of those payments.

*See* Exh. F, Ameriprise debit card transaction statements; Exh. G, Central debit card transaction statements; Exh. H, USAA Federal Savings Bank debit card transaction statements; Exh. I, Wings Financial Credit Union debit card transaction statements; Exh. J, Ally Bank statements.

11. The debtor's spending spree has continued after the filing of the petition and includes an additional $5,400.00 spent at Target Field on March 5, 2013; (b) four more draft checks payable to persons or entities to be determined in an aggregate amount of $6,675.00 between February 22, 2013 and March 1, 2013; and (c) ATM cash withdrawals of $1,338.00 including $329 withdrawn on February 9, 2013 from an ATM at Running Aces Racetrack. See Exh. K, Ameriprise debit card transaction statements; Exh. I, Wings Financial Credit Union debit card transaction statements.

12. On April 17, 2013, the trustee requested that the debtor turn over the full amount of $23,000.00 that the debtor withdrew from his IRAs prepetition, replaced into his IRAs shortly before filing, and re-withdrew shortly after filing all with the intent to hinder, delay and defraud his creditors.

**WHEREFORE**, the trustee moves the court for an order sustaining the trustee's objection to exemption of the debtor's assets based on bad faith with the intent to hinder, delay and defraud his creditors. The debtor's attempted manipulation of the bankruptcy process should not be rewarded. As such, the trustee requests that her objection to the debtor's exemption of the IRA to the extent of $23,000.00, the Twins tickets and Macbook Air be sustained. The trustee also requests turnover of the $23,000.00, the Twins tickets, the Macbook Air, the $3,950.00 refunded by St. Scholastica shortly after the bankruptcy petition was filed, and $129.99 refunded by Cabela's shortly after the bankruptcy petition was filed.

Dated: April 19, 2013.

                                    MANTY & ASSOCIATES, P.A.

By:    /e/ *Nauni Jo Manty*
      Karl J. Johnson (#0391211)
      Nauni Jo Manty (#230352)
      Timothy J. Pramas (#240321)
      Jacqueline J. Williams (#386611)
      510 First Avenue North, Suite 305
      Minneapolis, MN 55403
      (612) 465-0990

      ATTORNEYS FOR TRUSTEE

## **VERIFICATION**

  I, Nauni J. Manty, the movant named in the foregoing Notice of Hearing, Motion for Objection to Claimed Exempt Property, and Motion for Turnover, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

  Dated: April 19, 2013

                 */e/ Nauni J. Manty*_____
                 Nauni J. Manty, Trustee

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                         Chapter 7 Case

Dean J. Petersen,                                                              BKY 13-40368

                Debtor.

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR OBJECTION TO CLAIMED EXEMPT PROPERTY AND MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE

### INTRODUCTION

The chapter 7 trustee, Nauni J. Manty, submits the following memorandum in support of her motion for objection to the debtor's claimed exempt property and turnover of property of the estate. The facts are set forth in the motion, which are incorporated herein by reference.

### FACTS

The facts are as stated in the motion and to avoid duplication the trustee incorporates the facts into this memorandum.

### LEGAL ANALYSIS

**The Debtor's Exemption in His IRA is in Bad Faith**

As the basis for objection to debtors' claimed exemption in the IRA assets, the trustee asserts that the debtor temporarily parked $23,000.00 from an inheritance in the IRA in bad faith and with fraudulent intent to hinder and delay creditors. In general, debtors are allowed to engage in "exemption planning" as long as they act in good faith and without fraudulent intent. *In re Tveten*, 402 N.W.2d 551, 555 (Minn. 1987). When the debtor converts non-exempt assets into exempt assets with fraudulent intent, however, a court may deny or reduce the claimed exemptions. *In re Sholdan*,

217 F.3d 1006, 1010-11 (8th Cir. 2000). "Under Minnesota law, whether fraud exists in a situation involving the conversion of non-exempt to exempt assets is determined by reference to the UFTA." *Jensen v Dietz*, 217 F.3d 1006, 1009 (8th Cir. 2000). Because direct evidence of fraud is rare, a court may infer fraudulent intent through the non-exhaustive "badges of fraud" listed in Minn. Stat. 513.44(b). *Id.* Furthermore, "a court is not limited to only those factors or 'badges' enumerated, but is free to consider any other factors bearing upon the issue of fraudulent intent." *Id.* at 1010. Likewise, a finding of bad faith in a claim of exemption "is determined by an examination of the totality of the circumstances." *In re Kaelin*, 308 F.3d 885 (8th Cir. 2002).

In this case, the facts support a finding of fraud and bad faith based on enumerated badges of fraud and also the totality of the circumstances. In a similar case, Judge Dreher wrote that "[m]any of the badges of fraud are present: Debtor essentially transferred assets to himself; this was done at a time when he was insolvent; and the transfers constituted substantially all of his non-exempt assets." *In re Maronde*, 332 B.R. 593 (Bankr. D. Minn. 2005) (denying a claimed homestead exemption to the extent that $18,750.46 of non-exempt assets was converted to homestead equity on the eve of filing).

All of the factors cited by Judge Dreher in *In re Maronde* apply to this debtor. The debtor transferred $23,000.00 into his IRAs on January 16, 2012, only nine days before filing bankruptcy. A transfer into his IRA is essentially a transfer to himself, an insider. Minn. Stat. 513.44(b)(1). The transfer was done at a time when the debtor was insolvent, and only nine days before he filed his bankruptcy petition. Minn. Stat. 513.44(b)(9). The transfer constituted substantially all of his non-exempt assets. Minn. Stat. 513.44(b)(5).

Furthermore, there is an additional badge of fraud that is not included in the statutory enumeration. Debtor Petersen reversed the transfer shortly after filing bankruptcy when he thought it

was safe to do so. First, he withdrew $22,000.00 from his IRA on February 20, 2012, less than one month after filing bankruptcy. Then, he continued withdrawing $2,000.00 per month after that in a regularly scheduled transfer. By transferring the $23,000.00 into the IRA and claiming it exempt under 522(d)(10)(E), the debtor misrepresented that he intended to save the funds for retirement when, in fact, he actually intended to merely protect the $23,000.00 from the inheritance for the short-term with the actual intent to reconvert the $23,000.00 to a non-exempt asset as soon as he thought it was safe to use the proceeds. Because of the debtor's fraudulent intent, the claimed exemption in his IRA should be denied to the extent that he fraudulently converted non-exempt to exempt assets on the eve of filing.

### The Debtor's Exemptions in Luxury Items Should be Denied

As the basis for the trustee's objection to the debtor's claimed exemptions in his Twins season tickets and his Macbook Air, the debtor purchased the items shortly before the he filed bankruptcy. The luxury items are not needed for a fresh start. The Debtor is entitled to a "fresh start", not a "head start" *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir. 1988). The court is required to "engage in the unenviable task of scrutinizing the debtor's schedule of income and expenses." *In re Nicola*, 244 B.R. 795, 797 (Bankr. N. D. Ill. 2000) (citing *In re Johnson*, 241 B.R. 394, 398 (Bankr. E. D. Tex. 1999)). The inquiry should be conducted in such a way as to balance the interests of creditors in obtaining repayment of some portion of their claims with the legitimate interest of the debtor in obtaining a fresh start. *See In re Bonuchi*, 327 B.R. 428 (Bankr. W.D. Mo. 2005) (citing *In re Gonzales*, 157 B.R. 604, 608 (Bankr. E.D. Mich. 1993). "Some expenditures, such as those for food, clothing, shelter and the like are clearly essential. Others, such as for luxury items, clearly are not" *In re Bonuchi*, 327 B.R. 428, 433 (Bankr. W.D. Mo. 2005).

Allowing the debtor to keep luxury items purchased shortly before the filing of the bankruptcy petition would provide the debtor a headstart instead of just a fresh start.

In this case, the debtor went on a pre-petition spending spree, purchasing luxury items and services that are unnecessary for a fresh start. During the three months prior to filing, the debtor spent at least $2,271.78 at restaurants, spent $4,331.12 on sporting goods, firearms, and firearms training, spent $570.00 on tattoos, spent $2,710.48 on electronics, and $3,760.90 on baseball related transactions. In addition to the transactions that can be traced through bank statements, the debtor withdrew $4,958.95, including fees, in cash from ATMs and wrote seven checks in an aggregate amount of $8,021.00 made payable to persons or entities to be determined. While the value of the services and restaurant meals cannot be recovered, the Twins season tickets are worth $2,700.00 and the new Macbook Air is worth nearly a thousand dollars used. Luxury items such as these are not essential to the debtor's fresh start and should be recovered for the benefit of creditors.

The trustee has met her burden by a preponderance of the evidence. Based on the totality of the circumstances, the debtor's expenditures on luxury goods and services shortly before filing constitute bad faith and bar the exemption of the Twins tickets and MacBook. The trustee requests that the court sustain the trustee's objection.

## Property of the Estate Should be Turned Over

The law pertinent to the motion for turnover is found in 11 U.S.C. §§ 541(a) and 542(a). 11 U.S.C. §541(a) provides that:

> The commencement of a case under § 301, 302 or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

>    (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of this case.

11 U.S.C. §542(a) provides that:

> (a) Except as provided in subsections (c) or (d) of this section, an entity other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under Section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The estate created by 11 U.S.C. § 541(a) includes all the assets listed on the debtor's Schedule B and the debtor's interest in unscheduled assets including the money he paid in tuition to St. Scholastica and the merchandise that he purchased and returned to Cabela's. The trustee requests that the court order the debtor to turn over non-exempt property including the $23,000.00 that was fraudulently deposited into the IRA on the eve of filing, the luxury items purchased in bad faith shortly before filing, and the value of merchandise and services that were paid for pre-petition and returned for a full refund shortly after the filing.

The debtor should be ordered to turnover non-exempt assets promptly because he has demonstrated a proclivity for trying to hide assets to hinder and delay creditors. The payment of tuition to St. Scholastica appears to be part of the debtor's fraudulent scheme to protect assets just to reclaim them when he thought it was safe to do so. The debtor could not deposit more than $23,000.00 into his IRA because the rollover provisions of the Internal Revenue Code limit the return of IRA assets to the amount that was withdrawn. The debtor maxed out his available exemptions under 11 U.S.C. § 522(d)(5) for assets not including the tuition. If the debtor had not spent the $3,950.00 on tuition at St. Scholastica, the debtor would not have been able to claim it exempt. Rather than keep non-exempt cash that would have to be surrendered to the estate, the

debtor spent the money in a way that a bankruptcy trustee would not normally consider liquid: college tuition. In this case, however, the payment of the tuition ten days before filing and the full refund less than a month after filing, when considered alongside the similar transactions in the IRA, create a pattern of fraudulent activity. Because of the debtor's demonstrated proclivity for trying to hide assets to hinder and delay creditors, the debtor should be ordered to turn over all non-exempt assets immediately.

## **CONCLUSION**

The debtor has engaged in a pattern of bad faith fraudulent activity sufficient for a denial of his claimed exemption in his IRA and sufficient to justify immediate turnover of the assets so that the debtor cannot further attempt to hinder creditors. The debtor fraudulently converted non-exempt inheritance proceeds into exempt IRA assets on the eve of filing only to re-convert the funds back to non-exempt assets within a month of filing. The debtor also registered for college classes on the eve of filing, paid $3,950.00, and then de-matriculated and received a full refund of the tuition less than a month after filing. The debtor's actions demonstrate a clear pattern of fraudulently protecting assets in bad faith with the intent to hinder, delay and defraud his creditors. For these reasons, the debtor's claimed exemption in his IRA should be reduced by the amount of the $23,000.00 that he fraudulently converted on the eve of filing and the debtor's claimed exemptions in luxury items purchased shortly before filing should be denied. Because of the pattern of fraudulent conduct, the debtor should be ordered to immediately turn over non-exempt assets including the $23,000.00 that he fraudulently converted from non-exempt to exempt, the Twins season tickets that he purchased less than two months before filing, the Macbook Air that he purchased approximately one month before filing, the $3,950.00 refund from St. Scholastica, and the $129.99 refund from Cabela's.

Dated: April 19, 2013.

                              MANTY & ASSOCIATES, P.A.

By:   /e/ *Karl J. Johnson*
       Karl J. Johnson (#0391211)
       Nauni Jo Manty (#230352)
       Timothy J. Pramas (#240321)
       Jacqueline J. Williams (#386611)
       510 First Avenue North, Suite 305
       Minneapolis, MN 55403
       (612) 465-0990

       ATTORNEYS FOR TRUSTEE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                             Chapter 7 Case

DEAN PETERSEN,                                     BKY 13-40368 RJK

                    Debtor.

## UNSWORN CERTIFICATE OF SERVICE

    I, Natalie Sieber, declare under penalty of perjury that on April 18, 2013, I served copies of the attached Notice of Hearing and Unsworn Certificate of Service by first class U.S. mail, to the following parties:

| | |
|---|---|
| Dean Petersen<br>15390 18th Ave., Apt. 1110<br>Plymouth, MN 55447 | United States Trustee<br>1015 U.S. Courthouse<br>300 So. Fourth St.<br>Minneapolis, MN  55415 |
| | Barbara J. May<br>2780 N. Snelling<br>Suite 102<br>Rosevill, MN 55113 |

Executed on: April 19, 2012        Signed: */e/ Natalie Seeber*
                                                          Natalie Seeber, Paralegal
                                                          510 First Ave N, Suite 305
                                                          Minneapolis, MN 55403

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                    Chapter 7 Case

Dean Petersen                                                      BKY 13-40368
                              Debtor.

**ORDER**

This matter came before the court on the motion of the trustee, Nauni J. Manty

(1) objecting to the debtor's claims of exemption of the following property—

    (a) $23,000.00 of an inheritance which was transferred into an IRA;

    (b) Twins Season Tickets purchased shortly before filing; and

    (c) a Macbook Air purchased shortly before filing; and

(2) seeking turnover of the debtor's non-exempt assets including

    (a) the $23,000.00 from the inheritance and now in the IRA;

    (b) the Twins season tickets

    (c) the Macbook Air

    (d) $3,950.00 of tuition paid by the debtor ten days before filing and refunded to the debtor less than a month after filing; and

    (e) $129.99 received by the debtor as a refund for merchandise purchased from Cabela's pre-petition.

Based upon the files, records, and proceedings herein,

**IT IS ORDERED:**

1. The trustee's objection to the claim exemptions is sustained.

2. The debtor's 11 U.S.C. § 522(d)(10)(E) exemption shall be reduced by the amount of $23,000.00 that was fraudulently converted shortly before filing.

  3. The debtor's exemption under 11 U.S.C. § 522 (d)(5) of the Macbook Air and the Twins season tickets shall be denied as bad faith purchases of luxury items shortly before filing.

  4. The trustee's motion for turnover is granted.

  5. The debtor shall turn over:

   a) $23,000.00 representing the amount that was fraudulently converted from a non-exempt to exempt asset on the eve of filing,

   b) the Macbook Air,

   c) the Twins season tickets,

   d) $3,950.00 received as a refund of tuition that was paid pre-petition, and

   e) $129.99 received as a refund for merchandise purchased pre-petition

within five days of the date hereof.

Dated: _____

                   United States Bankruptcy Judge